

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/06/2007

| | | |
|---|---|---|
| **IN RE:** | § | |
| **BENJAMIN ALLEN PADILLA,** *et al* | § | **CASE NO: 04-42708** |
|     Debtor(s) | § | |
| | § | **CHAPTER  13** |
| | § | |
| **BENJAMIN ALLEN PADILLA,** *et al* | § | |
|     Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 06-03609** |
| | § | |
| **WELLS FARGO HOME MORTGAGE,** | § | |
| **INC.,** *et al* | § | |
|     Defendant(s) | § | |

| | | |
|---|---|---|
| **IN RE:** | § | |
| **DOMINIQUE F SANDERS; aka MILES;** | § | **CASE NO: 05-30917** |
| **aka DAVIS** | § | |
|     Debtor(s) | § | |
| | § | **CHAPTER  13** |
| | § | |
| **DOMINIQUE F SANDERS** | § | |
|     Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 06-03654** |
| | § | |
| **NOVASTAR MORTGAGE, INC.** | § | |
|     Defendant(s) | § | |

### MEMORANDUM OPINION

A mortgage lender routinely incurs legal fees, inspection costs, and other expenses ("Reimbursable Expenses") to protect its security interest in a debtor's home.  Mortgage contracts generally authorize these Reimbursable Expenses.  This case requires the Court to consider how the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure affect a lender's right to collect Reimbursable Expenses in a chapter 13 bankruptcy case.

The parties in these cases filed cross-motions for partial summary judgment.  They agree that the mortgage contracts allow the lenders to recover their Reimbursable Expenses.  The parties also agree that the Debtors can challenge the imposition of those costs in this Court.

However, the parties dispute the procedures that the Lenders must use to impose and collect Reimbursable Expenses and the procedures that the Debtors may use to object to Reimbursable Expenses.  The two positions can be summarized as follows:

- The Lenders contend that Bankruptcy Code § 1322(b)(2) preserves the Lenders' contract rights throughout a chapter 13 case.  Consequently, Lenders are free to charge the  Reimbursable Expenses without court authorization.  Although the Lenders acknowledge that the Bankruptcy Court is an appropriate forum for any challenge by these Debtors, the Lenders also contend that the Debtors must challenge any charges only under applicable non-bankruptcy law.

- Although the Debtors acknowledge that § 1322(b)(2) preserves the lenders' contract rights, the Debtors contend that these rights are circumscribed by specific Code provisions and Bankruptcy Rules.  One such provision is § 506(b), which allows creditors to obtain attorney's fees and other costs only if the creditor is oversecured.  Another is Bankruptcy Rule 2016(a), which requires persons seeking to collect Reimbursable Expenses from the estate to apply to the Court for their reimbursement.

For the reasons set forth below, the Court holds:

- Rule 2016(a) governs the collection of Reimbursable Expenses by the mortgage Lenders in these chapter 13 bankruptcy cases.

- The imposition of Reimbursable Expenses charged beyond those allowed by the contracts and non-bankruptcy law violates the order confirming the chapter 13 plans in these cases.

- Neither a lender's failure to comply with Rule 2016(a) nor its imposition of Reimbursable Expenses beyond those allowed by non-bankruptcy law violates the automatic stay.

- Either a lender's failure to comply with Rule 2016(a) or its imposition of Reimbursable Expenses beyond those allowed by non-bankruptcy law entitles a debtor to relief against the lender, including the recovery of costs and fees.

## Facts

**Benjamin and Denise Padilla**

On November 19, 1998, Benjamin and Denise Padilla ("the Padillas") executed a note and Deed of Trust[1] to Norwest Mortgage, Inc. ("Norwest"). The Deed of Trust granted Norwest a security interest in the Padillas' homestead. The Deed of Trust also provided that any costs or legal fees incurred by the lender to protect the lender's rights in the home would be added to the borrowers' secured debt.[2] Wells Fargo Bank, N.A. ("Wells Fargo") subsequently merged with Norwest and is the current note servicer.

Benjamin Padilla filed a voluntary chapter 7 petition on September 3, 2002. Denise Padilla filed a voluntary chapter 7 petition on January 6, 2003. The cases were consolidated on February 18, 2003. The consolidated case was converted to a chapter 13 case on February 23, 2003.

On March 26, 2003, Wells Fargo filed a proof of claim in the consolidated case for $177,604.43. Of that amount, $13,811.89 represented arrearages. On May 14, 2003, Wells Fargo and the Padillas agreed to an order modifying the stay. The order was issued by the Court and granted Wells Fargo $1,077.27 in pre-petition attorney's fees and costs and $600 for the

---

[1] Both Deeds of Trust and mortgages grant a lender a security interest in a debtor's home. However, the debtor retains title to the home under a mortgage. A neutral third party (a trustee) holds title to the home under a Deed of Trust. Texas is a "Deed of Trust" state. Nevertheless, common parlance utilizes the terms interchangeably. For the purposes of this opinion, the differences are irrelevant. For convenience, the Court refers to Deeds of Trust and mortgages interchangeably.

[2] Specifically, the Deed of Trust provides: "This Security Instrument secures to Lender: . . . (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security instrument . . ." Paragraph 7 provides: "Protection of Lender's Rights in the Property. If borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so."

costs of bringing its motion for relief from the stay. On September 22, 2003, Wells Fargo mailed the Padillas a notice of default and demanded $50.00 in attorney's fees incurred to send the notice.  The Padillas alleged there was no default and brought an adversary proceeding against Wells Fargo based on the default notice and an alleged failure to properly account for and apply funds.  The adversary proceeding was dismissed for want of prosecution.  On July 14, 2004, the Padillas' chapter 13 case was dismissed for missed payments.

The Padillas filed a second chapter 13 case on September 3, 2004.  Wells Fargo filed a proof of claim, listing $193,328.07 in secured debt.  Of that amount, $43,468.75 represented arrearages.  The Padillas neither objected to this claim nor listed any causes of action against Wells Fargo in their schedules.

On May 21, 2005, the Court approved the Padillas' plan.  The Padillas' chapter 13 plan stated that arrearage payments would be paid separately from principal and interest payments. Pre-petition arrearages would be cured by monthly payments fixed in amount by the plan. Principal and interest payments coming due post-confirmation would be paid directly to Wells Fargo and according to the Padillas' pre-petition mortgage contract.

While the Padillas' chapter 13 case remained pending, Wells Fargo filed two separate motions for relief from the stay.  The Court denied the first motion.  The Padillas and Wells Fargo resolved the second motion by an agreed order.  The order, approved by the Court, allowed $600 for attorneys' fees and costs.

On February 20, 2007, the chapter 13 trustee filed a notice stating that the Padillas had completed all plan payments and were eligible for discharge.  The Court issued an order discharging the Padillas on March 8, 2007.

4

Sometime after the discharge, the Padillas obtained a payment history on the Wells Fargo mortgage. The history suggested that the Padillas' account had been charged numerous Reimbursable Expenses during the Padillas' bankruptcy cases. Since the Padillas filed their first case in 2002, Wells Fargo incurred $15.00 "inspection fees" almost monthly. The fees apparently arose from "drive-bys" of the Padillas' home to ensure that the home was not being neglected or misused. During the same period, Wells Fargo also incurred attorney's fees and costs. Wells Fargo posted the Reimbursable Expenses to the Padillas' account. Many of these Reimbursable Expenses exceeded those allowed by agreed orders or were not otherwise approved by the Court. The parties dispute whether Wells Fargo merely posted the Reimbursable Expenses for internal records, or whether the Reimbursable Expenses were actual charges added to the Padillas' debt obligations. The parties also dispute whether Wells Fargo collected the Reimbursable Expenses by diverting portions of the  payments made pursuant to the Padillas' plan to offset posted Reimbursable Expenses..

**Dominique Sanders**

On January 25, 2002, Dominique Sanders ("Sanders") executed a note and Deed of Trust. Sanders' Deed of Trust granted the mortgage lender a perfected security interest in Sanders' homestead. The Deed of Trust also provided that any costs or legal fees incurred by the lender to protect the lender's rights in the home would be added to the borrower's secured debt. The paragraph authorizing the mortgage lender to protect its interest in the property and rights under the security agreement contained essentially the same language as Wells Fargo's Deed of Trust set forth above. Novastar Mortgage, Inc. ("Novastar") was the servicer on Sanders' mortgage during the period relevant to Sanders' adversary proceeding[3].

---

[3] On April 20, 2007, Novastar transferred the Sanders' mortgage to DLJ Mortgage Capital, Inc.

On January 19th, 2005 Sanders filed a chapter 13 petition.  The Court confirmed Sanders' chapter 13 plan on May 24, 2005.  Sanders' plan stated that arrearage payments would be paid separately from principal and interest payments.  Pre-petition arrearages would be cured by monthly payments fixed in amount by the plan.  Principal and interest payments coming due post-confirmation would be paid according to Sanders' mortgage contract.  To date, Sanders' chapter 13 case remains pending.

Not long after Sanders' plan was confirmed, on June 29, 2006, Novastar filed a motion for relief from the automatic stay.  Novastar alleged that Sanders had missed payments and was not carrying insurance on the home.  The Court denied the motion and ordered Novastar to remove from Sanders' account any charges added for attorneys' fees and costs related to the motion.

Throughout Sanders' bankruptcy case, Novastar incurred expenses in addition to those arising from their motion for relief from the stay.  Novastar, like Wells Fargo, incurred post-petition Reimbursable Expenses and posted the charges to Sanders' account.  As in the Padillas' case, the parties dispute both the purpose of the postings and action taken on the postings. Sanders alleges the postings were actual charges added to her debt obligation.  Novastar contends the postings were made only for internal record keeping purposes and Novastar had not yet determined whether to seek reimbursement from Sanders.  Sanders also alleges some portion of the costs were actually collected by diverting portions of the payments provided for by the plan.  Novastar denies that any costs were collected while Sanders' plan was in effect.

Dominique Sanders and the Padillas filed separate adversary proceedings against Wells Fargo and Novastar.  Both seek disgorgement of Reimbursable Expenses collected, actual and

punitive damages for automatic stay violations, sanctions, and a permanent injunction against further collection.

All parties filed cross-motions for partial summary judgment.  The motions address one issue: whether mortgage lenders must seek court approval through 11 U.S.C. §506(b) and Bankruptcy Rule 2016(a) before charging or collecting post-petition Reimbursable Expenses. Because the cross-motions in both cases raise similar issues, the Court issues this joint memorandum.  Separate orders will be issued.

### Jurisdiction

This Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C. § 1334[4].  The United States District Court's standing order of reference refers these matters to the bankruptcy judges for this district pursuant to 28 U.S.C. § 157.

---

[4]  Although not raised by any party, the Court has carefully considered its own subject matter jurisdiction in the Padillas' case.  Inasmuch as the plan has been fully performed, the Court must determine whether the subject matter of the Padillas' adversary proceeding is within the subject matter grant of 28 U.S.C. § 1334.  The Court has concluded that it does have subject matter jurisdiction.

As a general rule, a Bankruptcy Court's subject matter jurisdiction over a discharged debtor is limited to "matters pertaining to the implementation or execution of the plan". *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388 (5th Cir. 2001) (citing *In re Fairfield Communities, Inc.*, 142 F.3d 1093, 1095 (8th Cir. 1991); *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993). Enforcing Rule 2016(a) and the Court's order confirming the Padillas' chapter 13 plan is tightly intertwined with implementing and executing the Padillas' confirmed plan.  A court's order confirming a plan would be without force if a party could ignore and violate the order without repercussions.

Moreover, "it is well established that courts retain jurisdiction to enforce their own orders". *Koehler v. Grant*, 213 B.R. 567 (8th Cir. B.A.P. 1997) (citing *Shillitani v. U.S.*, 384 U.S. 364, 370, 86 S. Ct. 1531, 1535, 16 L.Ed. 2d 622 (1996); *Ex Parte Robinson*, 19 Wall. 505, 86 U.S. 505, 510, 22 L.Ed. 205 (1873); *In re Ragar*, 3 F.3d 1174, 1179 (8th Cir. 1993).  The partial summary judgment motions in this case contain allegations that Wells Fargo and Novastar violated the court order confirming the Padillas' and Sanders' confirmed plans.

The Fifth Circuit has also found that after a bankruptcy case is closed, subject matter jurisdiction remains in the Bankruptcy Court to assure that the rights afforded to a debtor by the Bankruptcy Code are fully vindicated. *In re Bradley*, 989 F.2d 802 (5th Cir. 1993).  In *Bradley,* the Court held that the alleged post-discharge employment discrimination against a debtor under 11 U.S.C. § 525 mandated that the Court exercise its subject matter jurisdiction. *Id.* at 804.  This case is analogous.  If a lender could wait until the conclusion of a bankruptcy case— and then impose disallowed charges—the debtor's fresh start would not be fresh at all.  It is well-recognized that a fresh start is a fundamental purpose of current bankruptcy law.  *Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct. 1105, 1115 (2007).

## Summary Judgment Standard

A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005).  Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.  At all times, a court views the facts in the light most favorable to the non-moving party.  *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006).  However, to weigh evidence would result in a credibility determination which is not part of the summary judgment analysis.  *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *See MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006).  A court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant bears the burden of proof, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Warfield*, 436 F.3d at 557.  The non-moving party has a duty to respond with specific evidence demonstrating a triable issue of fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005).  When identifying specific evidence in the record, the non-movant must articulate how that evidence supports its

position.  *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

**Analysis**

A mortgage lender *can not* collect post-petition Reimbursable Expenses without restraint. The nature of the restraint depends upon whether a mortgage lender charges the fees and expenses before or after a chapter 13 plan is confirmed.  The Court analyzes pre and post-confirmation limits separately.  The Court then considers a debtor's remedy when a mortgage lender fails to conform to these constraints.

**1. Post-Petition and Pre-Confirmation Restraints.** After a chapter 13 petition has been filed, and prior to a plan's confirmation, § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016(a) govern Wells Fargo's and Novastar's ability to collect Reimbursable Expenses.

*A. Section 506(b).*

§ 506(b) provides:  "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."

Section 506(b) authorizes oversecured creditors to recover interest and reasonable fees and expenses that accrue between the petition date and plan confirmation.  An undersecured creditor may not recover its post-petition, pre-confirmation fees and expenses. *In re Nair*, 320 B.R. 119, 126 (Bankr. S.D. Tex. 2004) (citing *United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, (1980)).

An oversecured creditor's right to recover post-petition costs is severely limited to ensure an equitable distribution among creditors.  The principal of equality among creditors underlies the Chapter 13 process. *Young v. Higbee Co.*, 324 U.S. 204, 210 (1945) ("(H)istorically

one of the prime purposes of the bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's assets"); *Cunard S.S. Co. v. Salen Reefer Services AB*, 773 F.2d 452, 459 (2d Cir. 1985); *In re Tate*, 253 B.R. 653, 666 n. 8 (Bankr. W.D. N.C. 2000) (citing H.R. Rep. No. 595, 95th Cong. 1st Sess. 177–78 (1977) (reprinted in 1978 U.S.C.C.A.N. 5963, 6138)).   This principle could not be realized if one creditor could deprive other creditors by depleting the estate with unjustified fee and expense claims.

To  maximize equality among creditors, courts closely scrutinize oversecured creditors' requests for post-petition fees, expenses and interest.   Courts require oversecured creditors to prove that their claims meet § 506(b)'s reasonableness requirements. *In re Tate*, 253 B.R. at 666 n. 8 ("fee requests are to be strictly construed, and the burden is on the creditor to show entitlement and reasonableness") (citing *In re Cuisinarts, Inc.*, 115 B.R. 744, 749 (Bankr. D. Conn. 1990); *In re Samsa*, 86 B.R. 863, 867 (Bankr. W.D. Pa. 1988); *In re United Nesco Container Corp.*, 68 B.R. 970, 970 (Bankr. E.D. Pa. 1987).

### B. Rule 2016(a).

To enable a court to apply the required scrutiny, a creditor must file a Rule 2016(a) application with information demonstrating the reasonableness of the fees and expenses.   Rule 2016(a) provides:

> "An entity seeking interim or final compensation for *services, or reimbursement of necessary expenses*, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested . . . The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is *filed by a creditor* or other entity."

Fed. R. Bankr. P. 2016(a) (emphasis added).  Rule 2016(a)'s plain language and case-law require creditors to file a Rule 2016(a) application before seeking compensation for Reimbursable

Expenses incurred post-petition but prior to a plan's confirmation. *Jones v. Wells Fargo Home Mortgage*, 2007 WL 1112047 * 8 (Bankr. E.D. La. Apr. 13, 2007) ("Legal fees incurred postpetition and prior to confirmation must be approved by the Court as reasonable under § 506(b) and Bankruptcy Rule 2016(a)"); *In re Tate*, 253 B.R. at 665 ; *In re Allen*, 215 B.R. 503, 504 (Bankr. N.D. Tex. 1997) ("All attorney's fees to be paid by debtors in bankruptcy cases must be approved by the Bankruptcy Court"); *In re Greenwich Showboat Ltd. P'ship*, 117 B.R. 54, 60 (Bankr. D. Conn. 1990) ("(i)n order to enable the court to make a determination as to reasonableness, a § 506(b) applicant must comply with Rule 2016(a)"); *In re Lane Poultry of Carolina, Inc.*, 63 B.R. 745 (Bankr. M.D. N.C. 1986); *In re Dooley*, 41 B.R. 31 (Bankr. N.D. Ga. 1984); *See also* 9 COLLIER ON BANKRUPTCY, ¶ 2016.04 (15th ed. rev. 2006) (citing numerous cases).

Wells Fargo and Novastar contend that Rule 2016(a) only applies to entities seeking reimbursement for services completed on behalf of the estate.  They argue that the Rule has no application to creditors who seek reimbursement for expenses incurred solely to protect their individual interests.

Wells Fargo and Novastar's argument ignores the case-law cited above and Rule 2016(a)'s plain language.  Nothing in Rule 2016(a)'s plain language limits its application to entities seeking compensation for expenses and fees incurred on behalf of the estate.  The rule explicitly states that it applies to a creditor. Fed. R. Bankr. P. 2016(a) ("The requirement of this subdivision shall apply to an application for compensation . . . even though the application is filed by a creditor . . . ").  Wells Fargo and Novastar have not cited and the Court has not found any cases holding 2016(a) *does not* apply to creditors charging and collecting post-petition professional fees and expenses.

Consequently, Wells Fargo and Novastar could not collect Reimbursable Expenses incurred post-petition and prior to confirmation of the Padillas' and Sanders' chapter 13 plans without restraint. Wells Fargo and Novastar were required to file a Rule 2016(a) application and obtain a Court order authorizing payment. Wells Fargo and Novastar did not file a Rule 2016(a) application or otherwise obtain a court order finding that the Reimbursable Expenses were authorized under § 506(b). However, the parties have not offered sufficient evidence to enable the Court to determine whether Wells Fargo and Novastar in fact collected any Reimbursable Expenses. Accordingly, the Court denies all parties' motion for partial summary judgment on this question.

This Court confirmed the plans in these two cases. Because of § 1322(b)(2), confirmation of the plan may allow even an undersecured creditor to collect its pre-confirmation Reimbursable Expenses. However, neither Novastar nor Wells Fargo complied with Rule 2016. The issue is now moot.

**2. Post-Confirmation.** After a chapter 13 plan is confirmed, § 1322(b)(2) of the Bankruptcy Code governs the lenders' rights to collect Reimbursable Expenses. With certain limitations not applicable here[5], § 1322(b)(2) requires a confirmed plan to preserve a lender's pre-petition rights under its pre-petition contract. For the reasons set forth below, § 506(b) no longer limits the lenders' contract rights. However, a mortgage lender's *exercise* of contracts rights is not without limits. Rule 2016(a), the order confirming the plan, and applicable non-bankruptcy law govern the manner and amount of charges and collection.

*A. Section 506(b).*

The Supreme Court and the 11th Circuit have clarified that § 506(b) has no application after a chapter 13 plan is confirmed. In *Rake v. Wade*, the U.S. Supreme Court stated that

---

[5] *See* § 1322(b)(5).

"506(b) applies only from the date of filing through the confirmation date". 508 U.S. 464, 468 (1993) (legislatively overruled on other matters). In *Telfair v. First Union Mortgage Corp.*, the 11th Circuit relied upon *Rake* to reject a claim similar to the Padillas' and Sanders' claims.  The lender assessed attorneys' fees to the debtors' account and sought to collect the fees by applying *post-confirmation* payments to the outstanding fees. 216 F.3d 1333, 1337 (11th Cir. 2000). The lender did not seek court approval before assessing the charges, but the lender's Deed of Trust provided for the charges. *Id*. at 1336.  Debtors alleged that this conduct violated § 506 and the automatic stay. *Id*. at 1336–37. According to the debtors, the lender should have requested a plan amendment instead of assessing the charges without court supervision. *Id*. at 1338. The 11th Circuit dismissed the debtor's complaint, holding that § 506(b) simply has no application after a plan is confirmed. *Id.* at 1338–39. *See also*, *In re 900 Corp*., 327 B.R. 585, 593 (Bankr. N.D. Tex. 2005) ("Because § 506(b) refers to reasonable fees, costs, or charges which may be added to an 'allowed secured claim,' it relates only to those fees, costs, or charges incurred post-petition.") (citing *In re Cummins Utility, L.P.*, 279 B.R. 195 (Bankr. N.D. Tex. 2002)). *See also* 4 COLLIER ON BANKRUPTCY, ¶ 506.04(2) (15th ed. rev. 2006) ("A secured creditor's entitlement to *postconfirmation* interest is governed by applicable provisions of sections 1129, 1225 and 1325, respectively, any relevant plan, and any relevant order confirming a plan. Section 506 thus *has no application* to a secured creditor's entitlement to *postconfirmation* interest.") (emphasis added); 4 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, § 304.1 (3rd ed. 2000) ("It should be noted that § 506(b) only applies to allow the addition of postpetition attorneys' fees to a creditor's oversecured claim *until confirmation*.") (emphasis added).

From a practical point of view, the foregoing cases are objectively reasonable.  Section 506(a) bifurcates secured claims into their economic components; those portions that are

economically protected by security are secured claims and those claims that have no economic

protection are unsecured claims. 11 U.S.C. § 506(a); *In re Bartee*, 212 F.3d 277, 284 (5th Cir.

2000). Section 506(b) then allows for the imposition of various charges (including interest), but

only to the extent of the value of the collateral. *United Sav. Ass'n. of Tex. v. Timbers of Inwood

Forest Associates, Ltd.*, 484 U.S. 365 (1988). If § 506(b) were applied post-confirmation, it

would directly conflict with § 1325.  Section 1325(a)(5)(ii) requires the payment of interest on

all secured claims, whether undersecured or oversecured, where the debtor retains the collateral.

One cannot simultaneously apply § 506(b) (disallowing interest on undersecured claims) and §

1325(a)(ii) (mandating interest on undersecured claims).   Moreover, value is a moving target.

Over a five-year chapter 13 plan, the value of collateral could rise or fall dramatically.   If §

506(b) were applied post-confirmation, it would require the treatment provided in the chapter 13

plan to vary with changes in the underlying collateral's value.

The Court declines to apply § 506(b) post-confirmation.

**B. Rule 2016(a).**

Rule 2016(a)'s plain language and the Congressional purpose behind the Federal

Bankruptcy Rules of Procedure make 2016(a) applicable post-confirmation as well as pre-

confirmation.

Rule 2016(a)'s plain language encompasses post-confirmation fees and expenses equally

with pre-confirmation fees and expenses.   The Rule applies to any "entity seeking interim or

final compensation for services or reimbursement of necessary expenses, from the estate".   The

Rule does not distinguish between pre and post-confirmation attempts to collect Reimbursable

Expenses. The Rule's plain-language covers Reimbursable Expenses sought anytime after an

estate comes into being and for so long as it remains in existence.

The Padillas' and Sanders' chapter 13 estates were created upon the commencement of their cases. 11 U.S.C. § 541(a). Their cases were commenced when their petitions were filed by a person eligible for relief under chapter 13. 11 U.S.C. § 301(a); *In re Salazar*, 339 B.R. 622, 625 (Bankr. S.D. Tex. 2006). Their chapter 13 estates remained in existence during the term of their chapter 13 plans[6]. 11 U.S.C. § 1306(a).

Wells Fargo and Novastar argue that Rule 2016(a) can not be applied post-confirmation because its application would directly conflict with a substantive Code provision, § 1322(b)(2). Wells Fargo and Novastar correctly note that Bankruptcy Rules may not contravene substantive rights contained in the Bankruptcy Code. 28 U.S.C. § 2075; *In re Waindel*, 65 F.3d 1307, 1309 (5th Cir. 1995) ("The Advisory Committee, as delegate of the Supreme Court's bankruptcy rulemaking power, had no authority to write a rule inconsistent with the Code"). The Rules implement the Bankruptcy Code.

Although Wells Fargo and Novastar are correct in their statement of the legal principle, the argument fails because Bankruptcy Rule 2016(a) does not conflict with § 1322(b)(2). Section 1322(b)(2) is an anti-modification provision that prevents a plan from modifying Wells Fargo's and Novastar's pre-petition contract rights. Rule 2016(a) does not modify any rights. As Wells Fargo and Novastar note, Rule 2016(a) is a procedural rule, not a substantive provision. Rule 2016(a) merely governs how substantive rights are implemented. Rule 2016(a) does not deny Wells Fargo or Novastar the ability to charge and collect post-petition Reimbursable Expenses. Rule 2016(a) only requires Wells Fargo and Novastar to receive approval for their Reimbursable Expenses.

---

[6] In a chapter 11 case, the existence of the estate generally terminates with plan confirmation. 11 U.S.C. § 1141(b). Accordingly, the Court cannot apply post-confirmation decisions under chapter 11 to the Rule 2016(a) issue.

If the Court should deny requested Reimbursable Expenses, the denial will not be based on the substance of Rule 2016(a) and would not deprive Wells Fargo and Novastar of their contract rights.   The denial would be based on a finding that the Reimbursable Expenses were not allowed under applicable non-bankruptcy law or that a failure to comply with Rule 2016(a)'s procedural requirements precluded recovery of the Reimbursable Expenses.   Under Texas state law, mortgage contracts can not provide for unreasonable fees.   To the extent that the Court denied unauthorized or unreasonable fees, the court would be *enforcing* the contract rights, not modifying or ignoring those rights.

Not only does Rule 2016(a) not conflict with 1322(b)(2), Rule 2016(a)'s application is also necessary for the  administration of chapter 13 cases and enforcement of chapter 13 Code provisions and plans.

A Bankruptcy Court is responsible for "administer(ing) the estate in an efficient and equitable manner, and protect(ing) the assets of the estate from depletion". *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1055 (5th Cir. 1986). Congress created the Bankruptcy Rules to help Courts fulfill their administrative responsibilities.  Federal Rule of Bankruptcy Procedure 1001 states that the Rules are to be "construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Federal Rule of Bankruptcy  Procedure 1001. Moreover, Congress intended for Courts to apply the Rules broadly. Federal Bankruptcy Rule 1001, Advisory Committee Note (1983) ("These rules apply to *all* cases filed under the Code *except* as otherwise *specifically* stated") (emphasis added).  Moreover, the primary purpose of bankruptcy laws is to ensure an efficient and just administration of a debtor's affairs.  *Katchen v. Landy*, 382 U.S. 323, 328 (1966) ("this Court has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate

of all bankrupts within a limited period'") (quoting *Ex Parte Christy*, 44 U.S. 292, (3 How) 312–14 (1845).

The Supreme Court recently reaffirmed that the Court must issue orders that are necessary to assure that the purposes of the Bankruptcy Code are fulfilled. *In re Marrama,* 127 S. Ct. at 1105 (2007). Judge Rosenthal recently applied *Marrama* to uphold this District's adoption of a local rule generally mandating the payment of chapter 13 mortgages through a trustee. As Judge Rosenthal explained:

> Marrama upheld a pragmatic remedy fashioned by a bankruptcy judge under section 105(a) to achieve a result that the Code clearly required, despite the apparently inconsistent approach of another Code section that was unclear or ambiguous. In this case, a similar application of section 105(a) is warranted. Section 1322(b)(2) expressly requires that the mortgagee receive its normal monthly payments. Section 1326(a)(1) states that the debtor "shall" begin making payments not later than 30 days after filing the plan and provides that the court may order "otherwise," which allows the court to require conduit payments through the trustee. Section 1326(a)(2) states that the trustee "shall" retain payments "proposed by the plan" made by the debtor to the trustee before confirmation. Section 1326(c) states that the trustee "shall" make payments to creditors "under the plan." The Code prohibits modifying the rights of mortgage lenders and creates a presumption in favor of payments disbursed through the trustee. The courts recognize the many reasons that conduit payment of mortgage installments protects debtors, creditors, and the integrity of the bankruptcy process. The interplay among the provisions that protect mortgage lenders' rights, those that authorize conduit payments, and those that require the trustee to retain some—but not all—payments by the debtor is unclear. Section 105(a) properly applies to allow the trustee to disburse the one or two monthly mortgage payments that are due postpetition but preconfirmation. The critical aspect of the payments at issue is not whether they are "under the plan" or "adequate protection" payments, but rather that they are simply conduit payments. Given the clear and explicit command of section 1322(b) to preserve the rights of holders of mortgage loans on the debtor's principal residence, and given the ambiguous interplay of sections1326(a)(1) and (2), the bankruptcy court's reasoned decision to allow the trustee to distribute mortgage payments received from the debtor in the short period between filing the petition and confirming the plan as well as after plan confirmation was an appropriate application of section 105(a), consistent with Marrama's approach.

*In re Perez,* C.A. 06-1160 (S.D. Tex. July 19, 2007).

The Court can not administer an estate in a just, speedy, inexpensive, efficient, and equitable manner without requiring creditors to file a Rule 2016(a) application for Reimbursable Expenses that creditors seek to collect post-confirmation.  Without Rule 2016(a) applications, the Court can not ensure compliance with § 1327(a), protect a debtor's rights under 1322(b)(5), or protect a debtor's right to a "fresh start" after completing a chapter 13 plan.

Without 2016(a), parties in interest, the chapter 13 trustee, the debtor and the Court would have no meaningful ability to determine whether mortgage lenders are complying with § 1327(a) or whether mortgage lenders are collecting unauthorized fees and expenses in violation of an order confirming a chapter 13 plan.  Section 1327(a) provides: "The provisions of a confirmed plan bind the debtor and each creditor . . . "  Violation of a confirmed plan constitutes violation of a court order.  This Court confirmed the Padillas' plan by order entered on May 21, 2005.  Sanders' plan was confirmed by order entered on May 24, 2005.

The chapter 13 plans confirmed in these cases allowed Wells Fargo and Novastar to collect monies from the Padillas and Sanders authorized by their mortgage contracts.  Sanders' plan provided that Novastar's secured claim "will be paid in accordance with the pre-petition contract held by the holder of the secured claim".  The Padillas' plan provided that Wells Fargo's secured claim would be paid "directly to the creditor", and that payment would be pursuant to 11 U.S.C. § 1322(b)(2).  Section 1322(b)(2) authorizes a mortgage lender to collect post-confirmation professional fees and expenses by incorporating the lender's pre-petition contract rights within a chapter 13 plan.  Section 1322(b)(2) provides that a chapter 13 plan can not:

> "modify the *rights* of holders of . . . a claim secured only by a security interest in real property that is the debtor's principal residence . . . " (emphasis added).

The Supreme Court has specifically held that § 1322(b)(2) incorporates a mortgagee's contract rights within a chapter 13 plan.  *Nobelman v. American Sav. Banks*, 508 U.S. 324, 328

(1993).  The Supreme Court held that because the Code does not define "rights", the Court must assume Congress "left the determination of property rights in the assets of a bankrupt's estate to state law". *Id.* at 329 (quoting *Butner v. U.S.*, 440 U.S. 48, 54–55 (1979)). Consequently, under § 1322(b)(2), Wells Fargo's and Novastar's "rights" are those reflected in the relevant mortgage instruments, which are enforceable under Texas law.  *Id.*  These rights "are rights protected from modification by § 1322(b)(2)". *Id.* at 329–30; *See also In re Wright*, 2007 WL 1892502 at *3 (7th Cir. July 3, 2007) (holding that, "by knocking out § 506, the hanging paragraph leaves the parties to their contractual entitlements", governed by state law); *In re Campbell*, 361 B.R. 831, 850 (Bankr. S.D. Tex. 2007) (holding that § 1322(b)(2) trumps § 506(b)).

However, Plaintiffs correctly note that *Nobelman* did not hold that § 1322(b)(2) immunized all mortgage rights from the effects of the Bankruptcy Code.  The automatic stay limits a lender's ability to exercise contractual foreclosure rights. *Nobelman*, 508 U.S. at 330. Additionally, § 1322(b)(5) authorizes debtors to cure defaults over time through a plan, despite contrary provisions within a lender's contract. *Id.*  Thus, specific provisions like the automatic stay and § 1322(b)(5) may limit a lender's ability to exercise their rights. *Id.* However, those limits "are independent of the debtor's plan or otherwise outside § 1322(b)(2)'s prohibition".  *Id.*

The general rule taken from § 1322(b)(2)'s plain language and *Nobleman* is that a mortgage lender's contract rights continue unimpaired through a chapter 13 plan.  However, § 1322(b)(2) does not immunize a lender's compliance with non-bankruptcy law governing those rights.

The Padillas' and Sanders' mortgage contracts are governed by Texas law.  Both the contracts and Texas law only allow for collection of reasonable and necessary fees and expenses. The Padillas' mortgage contract authorized Wells Fargo to collect the cost of actions "*necessary*

to protect the value of the Property and the Lender's rights in the property". Additionally, the contract authorized Wells Fargo to collect "*reasonable* attorneys' fees". Sanders' mortgage contract authorized Novastar to collect the cost of actions "*reasonable or appropriate* to protect the Lender's interest in the Property and rights under this Security Instrument". Additionally, the contract authorized Novastar to collect "*reasonable* attorneys' fees".

Under Texas law, reasonableness of attorneys fees is a question of fact and must be supported by competent evidence. *See, e.g.*, *Manon v. Tejas Toyota, Inc.*, 162 S.W. 3d 743, 751-52 (Tex. App.—Houston (14th Dist.) 2005, no pet.) Factors that may be considered in determining the reasonableness of attorneys fees include: (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *Arthur Anderson & Co. v. Perry Equip Co.*, 945 S.W. 2d 812, 818 (Tex. 1997); *Academy Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W. 3d 732, 742 (Tex. App.—Houston (14th Dist.) 2000, no pet.); *see also In re Valdez*, 324 B.R. 296, 300 (Bankr. S.D. Tex. 2005) (in the context of § 506(b), whether fees and costs are reasonable requires a determination that the creditor's action that resulted in such fees was of a kind that similarly situated creditors might reasonably conclude should be taken).

To the extent that Wells Fargo or Novastar collected attorneys' fees that were not reasonable under Texas law, or inspection costs not authorized by their mortgage contracts, the lenders violated the Padillas' and Sanders' chapter 13 plans.  Neither the chapter 13 Trustee, the Padillas, nor Sanders can enforce the confirmed plans unless they are informed of the charges that Wells Fargo and Novastar allege should be paid.  In furtherance of the Trustee's and the Debtors' ability to enforce orders confirming plans, the Bankruptcy Rules mandate the procedures set forth in Rule 2016(a).

Rule 2016(a) applications are also necessary to ensure debtors can exercise their right to cure defaults.  The Bankruptcy Code gives debtors the right to cure post-confirmation defaults at any point after confirmation.   Section 1322(b)(5) allows debtors to cure defaults, "notwithstanding paragraph (2)", the anti-modification provision.   Furthermore, 1329(a) provides:

> "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor . . ."

11. U.S.C. *See also, In re Mendoza*, 111 F.3d 1264 (5th Cir. 1997); *In re Jones* 2007 WL 1112047, at * 9 (citing *In re Mendoza,*111 F.3d 1264; *In re Hoggle*, 12 F.3d 1008 (11th Cir. 1994); *In re Binder*, 224 B.R. 483 (Bankr. D. Colo. 1998); *In re Comans*, 164 B.R. 539 (Bankr. S.D. Miss. 1994).  The failure to pay post-petition Reimbursable Expenses may create a post-petition default. *Mendoza*, 111 F.3d 1264; *Jones*, 2007 WL 1112047, at *9.  Debtors can not cure defaults pursuant to § 1325(b)(5) and § 1329(a) if  lenders do not disclose the defaults.

Most importantly, Rule 2016(a) ensures that the Debtors in these cases receive their "fresh start".  A primary purpose of the Bankruptcy Code is to grant debtors a "fresh start" after completing a chapter 13 plan. *Marrama*, 127 S. Ct. at 1115 ("the Bankruptcy Code is intended to give a 'fresh start' to the 'honest but unfortunate debtor'" (citing *Grogan v. Garner*, 498 U.S.

279, 286–87 (1991); *In re Tucker*, 224 F.3d 766 (table), 2000 WL 992448 at *1 (5th Cir. 2000) (noting that the Bankruptcy Code has a "policy of encouraging 'fresh starts' and therefore of discouraging harassment of an unwilling Debtor by an overzealous creditor").  Debtors cannot realistically obtain a "fresh start" if mortgage lenders can charge a debtor's account without disclosure.

The Padillas have completed all payments required by their confirmed plan.  After completing all required payments—and with no pending Rule 2016(a) applications—the Padillas allege that they are now informed by Wells Fargo that their mortgage is in default.  Without the disclosure that is inherent in Rule 2016(a), the Padillas cannot get a fresh start.  Life in a chapter 13 case is not a mere inconvenience.  If the Padillas have paid all of the cure payments required by their plan, Wells Fargo may not deny them the fresh start to which they are entitled.

Although Sanders has not yet completed the payments required by her confirmed plan, her situation is alleged to be no less dire.  She looks ahead to the termination of her plan with the fear that undisclosed fees and expenses could put her in immediate jeopardy of foreclosure upon completion of her chapter 13 plan.

Based on the foregoing, Rule 2016(a) applies post-confirmation to mortgage lenders who seek to collect Reimbursable Expenses allowed by their pre-petition contract.

Wells Fargo and Novastar deny collecting undisclosed charges.  They allege that the Reimbursable Expenses were merely recorded on their internal records, with no charges imposed against the Padillas or Sanders.  The Bankruptcy Code does not prohibit Wells Fargo or Novastar from maintaining internal records of costs incurred.  Based on the summary evidence, the Court cannot determine whether charges have actually been imposed.  Summary judgment is inappropriate on this issue.

**3. Remedies.**

   *A. The Automatic Stay.* The Padillas and Sanders allege that Wells Fargo and Novastar violated the automatic stay by collecting post-petition Reimbursable Expenses without complying with § 506(b) and Rule 2016(a).   The Court disagrees.   Collecting unauthorized Reimbursable Expenses post-petition and prior to confirmation violates § 506(b) and Rule 2016(a).   Collecting unauthorized Reimbursable Expenses post-petition and post-confirmation violates Rule 2016(a) and the terms of the Padillas' and Sanders' confirmed plans.   However, the alleged conduct does not violate the automatic stay in these cases.

   Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities.   11 U.S.C. § 362(a).   The stay acts as a "self-executing injunction".   *See*, *e.g.*, *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003) (citing *Gruntz v. County of Los Angeles*, 202 F.3d 1074, 1082 (9th Cir. 2000)).   The automatic stay has broad application and acts to restrain creditors from taking any action to continue collection efforts against the debtor or property of the estate.   11 U.S.C. § 362(a); *In re Chesnut*, 422 F.3d at 303. The automatic stay prevents creditors from scrambling to collect a debtor's limited assets while providing a debtor breathing room so that an equitable disbursement of the debtor's assets may be made to creditors.   *In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005).

   The stay, however, does not operate to stay proceedings or claims that arise *post-petition* unless the creditor seeks to enforce such claims against property of the estate.   11 U.S.C. § 362(a); 3 COLLIER ON BANKRUPTCY, ¶ 362.03(3)(c) (15th ed. rev. 2006) (citing *Bellini Imports LTD v. Mason & Dixon Lines, Inc.*, 944 F.2d 199, 201 (4th Cir. 1991)).

**1. Attempts to Collect Pre-Petition Debts.** The Padillas and Sanders first contend that Wells Fargo and Novastar violated the specific prohibitions found in § 362(a)(5) and (6). Section 362(a)(5) forbids creditors from taking *post-petition actions* to enforce liens securing a *pre-petition* claim.[7] *Id*. Similarly, 362(a)(6) precludes "any act to collect, assess, or recover a claim against the debtor that *arose before* the commencement of the case under this title". *Id*.

The Padillas and Sanders contend that the Reimbursable Expenses allegedly charged to their mortgage accounts were pre-petition claims. Even though the fees and expenses were incurred post-petition, the Padillas and Sanders contend that the costs are nevertheless properly characterized as pre-petition because they arose from rights contained in a pre-petition contract. Conversely, Wells Fargo and Novastar focus on the fact that the expenses were not incurred until after the petition and confirmation dates. The Padillas' and Sanders' argument overlooks the effect of a chapter 13 plan's confirmation. Once the Padillas' and Sanders' chapter 13 plans were confirmed, Wells Fargo's and Novastar's rights no longer arose from their pre-petition contracts. Their rights arose from the confirmed plan.

Section 1327(a) provides:

> "The Provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan".

11 U.S.C. § 1327(a).

A confirmed plan constitutes a new contract between the debtor and creditors. *In re Stratford of Tex., Inc.*, 635 F.2d 365, 368 (5th Cir. 1981)[8]; *In re Dow Corning, Corp.*, 456 F.3d

---

[7] Specifically, 362(a)(5) prohibits: "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that *arose before* the commencement of the case under this title." 11 U.S.C. § 362.

[8] Section 1141(a) uses similar language to § 1327 to describe the effect of a chapter 11 plan's confirmation. Section 1141(a) states: "Except as otherwise provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of

668, 676 (6th Cir. 2006) ("the plan is effectively a new contract between the debtor and its

creditors") (citing *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir.

1993)). A plan's contents will be shaped by claims that arose prior to a debtor's bankruptcy

petition.  However, after plan confirmation, a creditor's rights are defined by the confirmed plan.

*In re Talbot*, 124 F.3d 1201, 1209 (10th Cir. 1997) ("because 'creditors are limited to those

rights that they are afforded by the plan, they may not take actions to collect debts that are

inconsistent with the method of payment provided for in the plan'") (quoting 8 COLLIER ON

BANKRUPTCY, ¶ 1327.02[1][b] (15th ed. rev. 1996)). Consequently, a pre-petition claim provided

for in a confirmed plan is no longer a pre-petition claim.  The claim is a right to payment arising

from the confirmed plan.

In these cases, the new contract created upon confirmation of the plan has the following

salient features:

- The new contracts allow the Padillas and Sanders to repay their pre-petition mortgage arrears over time.  This provision is inconsistent with the pre-petition contracts between the parties, but is specifically authorized by § 1322(b)(5) of the Bankruptcy Code.

- The new contracts otherwise preserves the parties' mutual rights and obligations that were set forth in their pre-petition mortgage obligations.

- It is the creation of the new contract that precludes Wells Fargo and Novastar from exercising their default rights based on the pre-petition arrearage.  Any argument that the confirmed plan does not create a new contract is inconsistent with the accepted position that Wells Fargo and Novastar cannot exercise rights based on the pre-petition default.

Because confirmation of a chapter 13 plan converts the claim for Reimbursable Expenses

into a claim arising under the confirmed plan—rather than a claim arising under the pre-petition

contract—Wells Fargo and Novastar do not violate the automatic stay by enforcing the plan

such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan".  Accordingly, cases decided under § 1141(a) with respect to this issue are analogous.

provisions.  Even if Wells Fargo and  Novastar make errors in enforcement of the plan, those errors do not violate § 362(a)(6) because they are an enforcement of the post-petition plan rather than an enforcement of the pre-petition claim.  Of course, Wells Fargo and Novastar could violate other provisions of § 362 even with respect to the post-petition contract created by the plan.  For example, Wells Fargo or Novastar could seize the debtors' bank accounts or foreclose on their homes, either of which would violate § 362(a)(3).  However, there is no suggestion that either Wells Fargo or Novastar have engaged in any such violative behavior.  The Padillas' and Sanders' argument with respect to 362(a)(5) similarly lacks merit.  The application of funds by Wells Fargo and Novastar is not an act to create, perfect or enforce a lien.  Indeed, the lenders have no lien on the debtors' disposable income

**2. Attempts to Control Property of the Estate.** 11 U.S.C. § 362(a)(3) precludes "any act to obtain possession of *property of the estate* or of property from the estate or to exercise control over property of the estate".  The Padillas and Sanders argue that charging the fees and expenses to their accounts, as well as allocating payments made to offset principal and arrearage obligations, constitute "act(s) to obtain possession" of estate property.[9]

The mere posting of a charge, without more, is not "an act to obtain possession". *Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3 (1st Cir. 2003).  The primary purpose of the automatic stay is to prevent "the disorderly, piecemeal dismemberment of the debtor's estate

---

[9] It is unclear whether Sanders and the Padillas are pursuing the § 362(a)(3) issue.  The automatic stay argument in the Padillas' first complaint focused on § 362(a)(3) & (4).  Complaint at 5, Benjamin A. Padilla and Denise Y. Padilla v. Wells Fargo Mortgage, Inc., (Bankr. S.D. Tex. 2006) (No. 06-03609).  In their Amended Complaint, the Padillas focused their stay argument on § 362(a)(5) & (6). Amended Complaint at 5.  Nevertheless, the Padillas' motions for partial summary judgment again raised the § 362(a)(3) & (4) argument. Plaintiffs' Motion for Partial Summary Judgment at 7. The automatic stay argument in Sanders' first complaint did not cite which § 362(a) subsection Sanders was relying upon. Complaint at 3–4, Dominique Sanders v. Novastar Mortgage, Inc. (Bankr. S.D. Tex. 2006) (No. 06-03654).  Moreover, Sanders' Motion for Partial Summary Judgment also raised the § 362(a)(3) & (4) argument. Plaintiff's Motion for Partial Summary Judgment at 7.

outside the bankruptcy proceedings". *Id.* A mere internal record does not take or threaten to take estate property.

Nor would Wells Fargo's or Novastar's alleged allocation of payments contrary to the plan violate § 362(a)(3). That section only prohibits "acts" with respect to "property of the estate". The conduct in question involves two separate acts: an initial deposit within a general account, and a latter allocation from the general account to individual accounts. The first act involved "property of the estate", the second did not. Only the second act, involving non-estate property, was allegedly wrongful.

The Padillas' and Sanders' payments were "property of the estate" when sent to Wells Fargo and Novastar. 11 U.S.C. § 1306(a)(2). However, when Wells Fargo and Novastar received the Padillas' and Sanders' payments, they presumably deposited the funds into a bank account. Once Wells Fargo and Novastar deposited the payments into their own accounts, the funds were no longer property of the estate. The deposited funds were Wells Fargo's and Novastar's property.

Thus, Wells Fargo's and Novastar's only "act" with respect to "property of the estate" was the receipt and initial deposit of the payments. No one contends Wells Fargo's and Novastar's receipt and initial deposit of funds paid voluntarily and pursuant to a confirmed plan violated the automatic stay. After depositing the payments to their own accounts, Wells Fargo and Novastar may have allocated (even wrongly) portions of the payments to offset Reimbursable Expenses charged. However, the posting of an item from one internal account to another is not an act to obtain possession of estate property. Wells Fargo and Novastar already

had possession when they received the payment. The improper allocation of payments may violate the confirmed plans, but does not violate the automatic stay.[10]

The contention that misallocating funds violates § 362(a)(3) misinterprets the scope of "acts" covered by that provision. Through § 362(a), Congress protected debtors from numerous types of creditor action. However, § 362(a) does not contain a single broad statement defining prohibited acts. Rather, § 362(a) has eight sub-parts, each prohibiting separate categories of conduct. Not every impingement on a debtor's rights violates § 362(a).

Section 362(a)(3) is essentially an "anti-grab-law" statute. The intent and purpose of (a)(3) is to prohibit physical taking of property or refusal to turn-over property within a creditor's physical possession. 3 COLLIER ON BANKRUPTCY, ¶ 362.03[5] (15th ed. rev. 2006) (noting that § 362(a)(3) "requires that no entity grab non-estate property *from* the estate"). Wells Fargo's and Novastar's alleged misallocation of funds did not involve grabbing property. Rather, Wells Fargo's and Novastar's alleged conduct would constitute a breach of a contractual promise. The Supreme Court has held that a mere breach of a promise, without accompanying physical taking or possession, does not violate § 362(a)(3). In *Citizens Bank of Maryland v. Strumpf*, a debtor argued that a bank's refusal to pay the debtor monies deposited in the debtor's bank account violated § 362(a)(3). 516 U.S. 16, 21 (1995). The Court disagreed, holding that the "refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise". 516 U.S. at 21.

Comparing the different language Congress used to define prohibited "acts" within § 362(a)'s subparts further clarifies (a)(3)'s anti-grab nature. Congress  prohibited distinct acts

---

[10] Because any improper allocation did not involve "property of the estate", § 362(a)(4) is also not applicable. Section 362(a)(4), like § 362(a)(3), requires the prohibited "act" to be taken against "property of the estate".  As set forth below, once the funds were received by the Lenders, they were no longer property of the estate. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995).

within subsections of § 362(a). Subsection (a)(3) prohibits acts with reference to "possession" and "control" ("any act to obtain possession . . . or exercise control"). Subsection (a)(6) prohibits an "act to collect, assess, or recover". Physical possession or control is not required.

The Court notes that this conclusion (regarding the applicability of the automatic stay) varies from the conclusion reached by Judge Bohm in *In re Sanchez*. 2007 WL 2137790 (Bankr. S.D. Tex. July 24, 2007). Although *Sanchez* is a carefully drafted and well-reasoned opinion, I respectfully disagree with Judge Bohm's conclusions on this narrow issue.

For the reasons set forth above, the Court concludes that there is little question that neither Novastar nor Wells Fargo violated § 362(a) if one narrowly applies the language of § 362(a). Judge Bohm takes a more holistic approach to the question and concludes that the application of the payments by the lender in *Sanchez* was a stay violation because it should be considered a single act along with the deposit of the funds. However, this holistic approach fails to account for the purpose of § 362(a)(3). As set forth above, the purpose of § 362(a)(3) is to prevent creditors from involuntarily grabbing estate assets. Applying § 362(a)(3) to a situation where a debtor makes a voluntary payment (although one that is improperly applied) expands the scope of § 362(a)(3) beyond its apparent purpose. I respectfully conclude that the holistic approach taken by Judge Bohm converts any contract breach into a stay violation and runs afoul of the Supreme Court's teachings in *Citizens Bank of Maryland v. Strumpf*.

The language used by the Supreme Court, in its unanimous opinion, is instructive:

[W]e are unpersuaded by respondent's additional contentions that the administrative hold violated §§ 362(a)(3) and 362(a)(6). Under these sections, a bankruptcy filing automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title," § 362(a)(6). Respondent's reliance on these provisions rests on the false premise that petitioner's administrative hold took something from respondent, or

exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, *see Bank of Marin v. England*, 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966); *Keller v. Frederickstown Sav. Institution*, 193 Md. 292, 296, 66 A.2d 924, 925 (1949); and petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise.

*Strumpf,* 516 U.S. at 21.

This disagreement with Judge Bohm's conclusion is of minor consequence. In *Strumpf,* the Supreme Court declined to address the effect of a chapter 13 plan confirmation on the parties' rights. *Strumpf,* 516 U.S. at 290 n.** ("We decline to address respondent's contention, not raised below, that the confirmation of his Chapter 13 Plan under 11 U.S.C. § 1327 precluded petitioner's exercise of his setoff right."). This Court holds that the Lenders are bound by the confirmed chapter 13 plans in these cases. Accordingly, this opinion agrees with Judge Bohm's conclusion that the alleged conduct is prohibited and—if proven—that the debtors are entitled to relief. It is the statutory sources of the relief on which we vary.

**B. State Law.** Debtors may challenge fees and expenses charged under state contract law. As set forth above, § 1322(b)(2) only *preserves* contract rights. It does not *immunize* mortgage lenders from allegations that they charged fees not authorized by the mortgage contract or non-bankruptcy law.

Additionally, RESPA provides numerous mortgagor protections[11]. Nothing in the Bankruptcy Code immunizes mortgagees from causes of action based on RESPA. RESPA imposes numerous obligations upon loan servicing companies, including:

● Upon receipt of a written request to explain charges, provide written notice to the borrower acknowledging receipt of the request and take appropriate action either by

---

[11] To the extent that RESPA is not inconsistent with the provisions of the Bankruptcy Code, the Court is unaware of any argument that its provisions are not applicable in a chapter 13 bankruptcy case.

making corrections or providing a written explanation. *Hutchinson v. Deleware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D. N.J. 2006).

●      Notify borrowers at least annually of any short-fall within an escrow fund. CONSTRUCTION AND APPLICATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT OF 1974, MICHAEL G. WALSH, American Law Reports,142 A.L.R. Fed. 511 (1997).

●      Provide borrowers an annual statement itemizing information relevant to an escrow account. *Id.*

To the extent that the Padillas and Sanders wish to challenge the Lenders' conduct under non-bankruptcy law, a trial is necessary and summary judgment is inappropriate.

*C. Disgorgement.* Under 11 U.S.C. § 105(a), the Court can order disgorgement of fees and expenses charged without filing a Rule 2016(a) application and in violation of a confirmed plan.

11 U.S.C. § 105(a) provides:

> "The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate ***to enforce or implement court orders or rules***, or to prevent an abuse of process"

Section 105(a) gives bankruptcy courts broad authority to take actions necessary and appropriate for administering and enforcing the Bankruptcy Code and enforcing a court's orders. *Marrama*, 127 S. Ct. at 1112 (noting the "broad authority granted to bankruptcy judges to take any action that is necessary or appropriate to 'prevent an abuse of process"); *U.S. v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986) (noting that § 105(a) "authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code").

A bankruptcy court's authority under § 105(a) is not without limits.  Section 105(a) can not be used to create substantive rights not found in the Bankruptcy Code or contravene specific Code provisions. *In re Waindel*, 65 F.3d 1307, 1309 (5th Cir. 1995).

Ordering disgorgement of Reimbursable Expenses collected in violation of Rule 2016(a) and the Padillas' and Sanders' confirmed plans is within the Court's § 105(a) authority. Ordering disgorgement of monies collected in violation of a Bankruptcy Rule and a confirmed chapter 13 plan does not create substantive rights not found in the Code or contravene existing Code provisions.  Rather, ordering disgorgement of monies collected in violation of a Bankruptcy Rule, § 506(b), or a confirmed chapter 13 plan is a necessary action to enforce and implement court orders and rules.  Such remedial measures are explicitly authorized by § 105(a). *American Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained".) (quoting *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04 (1947)); *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997) ("Reading [§105(a)] under its plain meaning, we conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code".); *In re Tate*, 253 B.R. at 669.

However, disgorgement is only proper if the professional costs were actually imposed or collected.  This would include the application of funds received from the debtors to payment of unauthorized Reimbursable Expenses.  Rule 2016(a), 506(b), and provisions of a confirmed plan are only triggered when a creditor actually seeks property of the estate.  An internal record

entry[12], without subsequent collection activities, does not implicate these provisions.  At this stage, the parties have not offered the Court sufficient evidence as to whether any Reimbursable Expenses were actually imposed.  The Court denies all motions for summary judgment on this issue.

**D. Attorneys Fees.**  The Padillas and Sanders also seek summary judgment that they are entitled to collect attorneys fees from Novastar and Wells Fargo.  At this stage, summary judgment on that issue is premature.

The collection of attorneys fees is governed by the American Rule.  *Travelers Cas. and Sur. Co. of America v. Pacific*, 127 S.Ct. 1199, 1200 (2007); *In re Nair*, 320 B.R. at 125. Accordingly, the Court must determine whether there is a basis for an award of attorneys' fees under any of the theories alleged by the Padillas and Sanders.

Section 362(h)[13] certainly requires an award of attorneys fees to debtors if there has been a willful violation of the automatic stay.  However, because no stay violation occurred in these cases, attorneys fees will not be awarded under § 362(h).

As set forth above, the confirmed plan constitutes a new contract between the parties. The Court has not yet determined whether there has been a violation of the confirmed plan.  If a violation has occurred, then an award of attorneys fees is appropriate under § 38.001 of the Texas Civil Practice and Remedies Code.  Because the merits of the underlying breach of contract claim have not been determined, summary judgment is inappropriate on this issue.

---

[12] The Court distinguishes internal record entries from external ones.  If the lender is merely maintaining its own cost records, the entry is internal.  If the record results in a receivable from the debtor, it is no longer merely an internal entry.  At that point, it becomes a charge imposed in violation of Rule 2016(a).

[13] The reference to § 362(h) is a reference to the Bankruptcy Code as it existed prior to the adoption of the Bankruptcy Abuse and Consumer Protection Act of 2005.  Section 362(h) is now amended and restated in § 362(k)(1) of the Bankruptcy Code.  However, The Act provides, with immaterial exceptions, that it "shall not apply with respect to cases commenced under title 11, United States Code, before the effective date of this Act." *In re McKinney,* 457 F.3d 623, 624 (7th Cir. 2006).

The Padillas and Sanders also seek to recover their attorneys fees based on Wells Fargo's and Novastar's failure to comply with Rule 2016(a).  The Court has not yet determined whether a Rule 2016(a) violation has occurred.  If a violation has occurred, it is unclear what remedy is appropriate.  The Court declines to address this issue on summary judgment.

**4. Equitable Defenses.**  Wells Fargo and Novastar contend that the doctrines of Res Judicata, Judicial Estoppel, and Laches prelude the Padillas and Sanders from objecting to the post-petition Reimbursable Expenses charges because the Padillas and Sanders did not object to the charges prior to confirmation of their plans.

*A. Res Judicata.*  In the Fifth Circuit, res judicata requires three elements: "1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; and 4) the same cause of action is at issue in both cases". *In re Baudin*, 981 F.2d 736, 740 (5th Cir. 1993).

Wells Fargo and Novastar have not established elements 2 and 4.  The Court never rendered a judgment on the propriety of the post-petition Reimbursable Expenses.  Because Wells Fargo and Novastar did not comply with Rule 2016(a), neither the Court nor the Padillas or Sanders were even aware that the Reimbursable Expenses were being charged.  Without knowledge of the charges, the Padillas and Sanders were unable to file a cause of action and the Court was never given the opportunity to render a judgment.

Additionally, in the Fifth Circuit, confirmation of a plan has binding, preclusive effect only upon plan provisions. *In re Taylor*, 132 F.3d 256, 260 (5th Cir. 1998) (citing *In re Howard*, 972 F.2d 639, 641 (5th Cir. 1992)).  The Padillas and Sanders do not object to a particular plan provision.  The Padillas and Sanders object to *how* a plan provision is being *implemented*. Specifically, the Padillas and Sanders do not object to the plan provision that provides for future

payments to be made in accordance with their mortgage contracts.   The Padillas and Sanders object to the nature (charging fees and expenses without disclosure) and amount (reasonable or unreasonable) of charges made pursuant to Wells Fargo's and Novastar's mortgage contracts.

**B. Judicial Estoppel.**   The doctrine of judicial estoppel is used to "prevent a party from assuming inconsistent position in litigation". *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004) (citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)).   Judicial estoppel can be invoked if three elements are shown: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent". *Id.* at 335. Neither the Padillas or Sanders ever contended that the post-petition Reimbursable Expenses allegedly charged were authorized.   Again, the Padillas and Sanders allege that they only recently obtained knowledge of the charges.   Judicial estoppel is not appropriate under these circumstances.

**C. Laches.**   The laches doctrine "prohibits a party from asserting a claim that has been unreasonably delayed until such time as other parties have acted, or circumstances have changed resulting in severe prejudice because of the delay". *In re Fein*, 22 F.3d 631, 634 (5th Cir. 1994) (citing *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 233 (5th Cir. 1984)).   The Padillas and Sanders allege that any delay  results from Wells Fargo's and Novastar's failure to comply with Rule 2016(a).   A party can not be held to have unreasonably delayed in filing a suit when the delay is caused by the adverse party's failure to conform to a Bankruptcy Rule.   *See Cen-Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir. 1995).   Because Wells Fargo and Novastar did not disclose

Reimbursable Expenses being charged, neither the Padillas, Sanders or the Court knew of the alleged charges until after the Padillas' and Sanders' plans were confirmed.[14]

## Conclusion

The Padillas and Sanders are not defenseless against alleged abusive charges by their mortgage lenders. Mortgage lenders' contractual rights to collect post-petition Reimbursable Expenses is limited by state law, Rule 2016(a), 506(b) (prior to a plan's confirmation only), and the provisions of a confirmed chapter 13 plan.

Neither the Padillas, Sanders, Wells Fargo, or Novastar have offered sufficient evidence to sustain their motions for partial summary judgment. Whether the Padillas or Sanders are entitled to disgorgement or damages or nothing depends on whether Wells Fargo or Novastar actually imposed post-petition Reimbursable Expenses rather than merely posted the charges on internal records. At this summary judgment stage, the Court can not determine whether any Reimbursable Expenses were actually imposed.

The Court will issue separate orders consistent with this memorandum opinion.

Signed at Houston, Texas, on August 3, 2007.

MARVIN ISGUR
United States Bankruptcy Judge

---

[14] Wells Fargo's first motion for partial summary judgment also briefly raised defenses based on waiver and § 349(b). Motion for Partial Summary Judgment at 21, 27–28. The Court's analysis rejecting Wells Fargo's res judicata, estoppel, and laches defenses applies equally to the waiver defense. Section 349(b) explains the effects of a bankruptcy case's dismissal. However, the Court fails to see and Wells Fargo has not explained how § 349(b) would deprive the Padillas' of a cause of action arising from unauthorized conduct that occurred prior to a bankruptcy case's dismissal. Nothing in § 349(b) deprives a debtor of a valid cause of action that arose during a bankruptcy case prior to its dismissal.

The Court also is not unmindful of the fact that the Padillas have previously filed an adversary proceeding against Wells Fargo. On April 5, 2004, the Padillas filed a complaint for conduct arising from their first consolidated bankruptcy case. The Court does not find that adversary proceeding to be relevant to the res judicata, estoppel, laches and waiver defenses. In that case, the Padillas' objected to Wells Fargo's failure to accept a payment and consequent mailing of a default notice. Their complaint did not allege that Wells Fargo was charging undisclosed Reimbursable Expenses or otherwise suggest that the Padillas had knowledge of the undisclosed charges disputed in the present adversary proceeding.